# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JEFFREY L. STILLWELL, )<br>d/b/a RSVP Wrecker Service, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JOHN D. LAWRENCE and )<br>TOWN OF SKIATOOK, )<br>)<br>Defendants. ) | Case No. 10-CV-0177-CVE-TLW |

## OPINION AND ORDER

Now before the Court are Plaintiff's Motion for Summary Judgment and Brief in Support Thereof (Dkt. # 21) and Defendants John D. Lawrence and Town of Skiatook's Motion for Summary Judgment (Dkt. # 22). Plaintiff filed a claim under 42 U.S.C. § 1983 alleging that defendants violated his constitutional rights by removing him from the Skiatook Police Department's (SPD) rotation log for wrecker services, because the notice of removal failed to strictly comply with the requirements of OKLA. STAT. tit. 47, § 952(c). Defendants respond that plaintiff received notice and an opportunity to be heard as required by the Due Process Clause of the Fourteenth Amendment, and plaintiff has failed to establish that his constitutional rights were violated.

## I.

Jeffrey L. Stillwell (Stillwell) operates a wrecker service in Skiatook, Oklahoma and is licensed by the state of Oklahoma to provide such services. Dkt. # 21, at 11. Stillwell was on the SPD's log of wrecker services that could be called to assist the police when it became necessary to tow a vehicle. On November 13, 2009, SPD received calls about a loud party at 616 South Creek Drive in Skiatook, Oklahoma and dispatched police officers to investigate. When they arrived, they

did not hear loud music or other noises coming from the house, but patrolled the area for about 30 minutes. Dkt. # 23-2, at 11. Later that night, SPD received similar calls and again sent police officers to investigate. Id. Sergeant Billy Wakefield and Officer Jesse Brewer found two teenagers in the front yard and one of the teenagers, Ryan Stillwell, stated that his brother lived in the house and had given him a beer. Ryan Stillwell was not over the age of 21. Wakefield and Brewer knocked on the door and made contact with Benjamin Stillwell. They observed numerous persons under the age of 21 consuming alcohol inside the house. Benjamin Stillwell was arrested for contributing to the delinquency of a minor and Ryan Stillwell was charged with underage drinking. Dkt. # 23-3, at 6. Brewer also spoke to three 16 and 17 year old girls who appeared intoxicated and admitted that they had been drinking alcohol. Dkt. # 23-2, at 12.

Stillwell arrived to pick up his younger son and attempted to enter the house. Police asked him to wait outside but he continued to try to enter the house. Id. at 12; Dkt. # 23-3, at 6. Wakefield observed that Stillwell seemed upset and Brewer heard Stillwell say "don't take my son to jail, you better not arrest my son or else its going to get bad, you better not arrest my son." Dkt. # 23-2, at 12; Dkt. # 23-3, at 6. Stillwell also told Wakefield that his son engaging in underage drinking was "not the problem but that the old man who lives next to him was the problem for complaining on him." Dkt. # 23-3, at 6. Brewer spoke to Stillwell on the phone after the incident and

> Mr. Stilwell [sic] told me he did not agree with my decision, he said it was better for his son to drink at his house than to drink and drive around. I tried to explain that I did not make the law I just enforced it. During the conversation I asked Mr. Stilwell [sic] how he would have felt if it was his sixteen year old daughter in the house with several adult males drinking and getting drunk. Mr. Stilwell [sic] said 16 year old girls are going to drink anyway so they can have an excuse for sleeping with a male subject the next day. The conversation was ended shortly after the statement.

Dkt. # 23-2, at 12.

2

Brewer was on duty the following night and was conducting a traffic stop when he observed a black Dodge Charger at a stoplight. The driver of the vehicle rolled down the window and Brewer clearly recognized the driver as Stillwell. The vehicle changed direction and parked near Brewer's police car while Brewer completed the traffic stop. Dkt. # 23-3, at 4. Brewer notified his supervisor about Stillwell's conduct and continued with his patrol. Stillwell continued to follow Brewer and engaged in threatening behavior. SPD Officer James Dean decided that it was necessary to intervene for officer safety and located a black Dodge Charger following Brewer's patrol car. Dkt. # 23-3, at 7. Stillwell parked next to a vehicle stopped by Brewer, and Dean approached Stillwell's vehicle. Dean asked if he could help Stillwell with anything and Stillwell responded in an aggressive manner "No, Can I help you." Id. at 8. Dean told Stillwell to move on and Stillwell responded in a more aggressive manner that he would leave when he was ready. Id. Stillwell drove away about two or three minutes later. Brewer reported that Stillwell continued to follow him and park his black Dodge Charger near traffic stops conducted by Brewer.

Stillwell's conduct came to the attention of SPD's Chief of Police John D. Lawrence. Stillwell went to the police station on November 16, 2009, and Lawrence informed Stillwell that police officers acted appropriately by arresting his son. Dkt. # 23-1, at 3. Lawrence also asked Stillwell about his harassment of Brewer, but Stillwell refused to explain his conduct or even admit that the conduct occurred. Id. Lawrence did not feel comfortable leaving Stillwell on the SPD's rotation log, because wrecker and towing services require regular interaction with SPD officers that could escalate into a difficult or "disastrous" situation. Id. However, he did not immediately remove Stillwell from the rotation log. Instead, Lawrence called the Oklahoma Department of Public Safety (DPS) to find out how to remove a wrecker service from the SPD rotation log. An

employee of the DPS informed Lawrence that removals must comply with OKLA. STAT. tit. 47, § 952(c). The statute requires that a person must be given 10 days notice before the removal becomes effective and the notice must be in writing, but also states that the notice "shall state the procedure and requirements for reinstatement." OKLA. STAT. tit. 47, § 952(c). Neither the Town of Skiatook (the Town) nor the SPD had a reinstatement policy or any other procedure for reinstatement, but the DPS employee informed Lawrence that most towns did not have such a procedure and Stillwell could still be removed from the rotation log if the notice requirements § 952(c) were satisfied. Dkt. # 23-1, at 4. Lawrence contacted officials in other nearby towns and inquired about their procedures for removing a wrecker service from the rotation log, and none of the towns had any type of policy or procedure for reinstatement. Id.

On November 19, 2009, Lawrence sent a letter to Stillwell notifying him that he was being removed from the SPD rotation log and the removal would become effective on December 2, 2009. Dkt. # 23-4, at 1. The letter advised Stillwell that the Town did not have a procedure for reinstatement to the rotation log. Id. Stillwell obtained the services of an attorney and his attorney sent a letter to the Town's Mayor, Steve Kendrick, on November 23, 2009. Stillwell stated that he did not feel that his removal was justified and the notice of removal did not conform with § 952(c):

> RSVP Wrecker maintains that such removal is illegal and unauthorized for the reason and upon the grounds that the City of Skiatook does not have procedures and requirements for reinstatement. More specifically the last section of paragraph C reads: "All notification for removal from rotation log shall be mailed to the wrecker service owner at least ten (10) days before removal from the rotation log AND SHALL state the procedure and requirements for reinstatement." (Emphasis added)
>
> Mr. Stillwell requests that the removal letter be rescinded. Mr. Stillwell is happy to sit down with the Chief of Police and yourself in an attempt to resolve this matter.

Dkt. # 23-5, at 1. The Town's attorney, Joel Barnaby, responded to plaintiff's letter on December 2, 2009 upholding Lawrence's decision to remove Stillwell from the rotation log due to Stillwell's "intimidating and verbally abusive" conduct toward SPD officers. Dkt. # 23-6, at 2. Barnaby also provided Stillwell a copy of the reinstatement policy created in response to plaintiff's previous letter. The reinstatement policy states:

> TOWN OF SKIATOOK POLICE DEPARTMENT POLICY
> CONCERNING WRECKER OR TOWING SERVICES
>
> I. The Chief of Police of the Town of Skiatook shall determine the list of all wrecker/towing services available.
>
> II. The Chief of Police shall have the discretion to remove a wrecker/towing service from that list, if the Chief determines it to be in the best interest of the police department.
>
> III. If a wrecker/towing service is removed from the list by the Chief of Police, the wrecker/towing service may, in writing, request reinstatement to that list to the Town Coordinator after the expiration of 30 days from the beginning date of removal from the list. In that written request for reinstatement, the wrecker/towing service shall list the reasons they should be reinstated. At the Town Coordinator's sole discretion, he may either grant or deny the request. If the request is denied, the wrecker/towing service may submit another request in writing to the Town Coordinator after the expiration of 90 days from the beginning date of removal from the list.

Dkt. # 23-7, at 1. Stillwell contested the validity of the reinstatement policy and, on December 4, 2009, he sent a letter to Barnaby requesting documentation to show that the reinstatement policy had been formally adopted by the Town. Dkt. # 23-8, at 1. Barnaby offered to meet with Stillwell, Lawrence, and the Town Coordinator, Martin Tucker, on December 15, 2009 "to discuss [Stillwell's] actions which were the basis for RSVP Wrecker Service's removal" from the rotation log, and Stillwell agreed to attend the meeting. Dkt. # 23-9, at 1.

5

At the December 15, 2009 meeting, Stillwell refused to acknowledge that he had engaged in any improper conduct and he simply asked to be reinstated to the rotation log. Tucker and Lawrence recall that Stillwell acknowledged that he asked Brewer not to arrest his son and he believed that Brewer owed him a favor for towing a vehicle for no charge belonging to Brewer. Dkt. # 21-1, at 5; Dkt. # 23-10, at 2. Stillwell denies that this occurred and claims that Tucker left the meeting after Stillwell refused to discuss his conduct on November 13, 14, and 15, 2009. Dkt. # 27, at 23. Tucker stated that he would consider Stillwell's request for reinstatement and reminded Stillwell about the Town's policy for reinstatement. Dkt. # 23-10, at 2. On January 7, 2010, Tucker sent a letter to Stillwell stating that he would not be reinstated to the rotation log based on the December 15, 2009 meeting. Dkt. # 23-11. However, Tucker advised Stillwell that 30 days had passed from his formal removal from the rotation log and he was eligible to apply for reinstatement to the rotation log under the Town's reinstatement policy. Id. Instead of applying for reinstatement, Stillwell filed this case on March 24, 2010, alleging that Lawrence violated Stillwell's constitutional rights. See Dkt. # 2. Plaintiff subsequently requested reinstatement to the rotation log on May 7, 2010, and his request was granted on July 2, 2010. Dkt. # 23-13, at 1; Dkt. # 23-16, at 1. Plaintiff's reinstatement was conditioned upon his agreement to behave professionally towards SPD officers. Dkt. # 23-14, at 2. Plaintiff did not acknowledge that he previously engaged in unprofessional behavior, but he agreed to abide by the conditions. Dkt. # 23-15, at 1. Plaintiff later filed an amended (Dkt. # 6)and second amended complaint (Dkt. # 15) clarifying that he was seeking damages for any lost profits between the effective date of his removal, December 2, 2009, and his reinstatement to the rotation log on July 2, 2010. He also added the Town as a party in the second amended complaint. See Dkt. # 15, at 2-3.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

**III.**

Plaintiff's motion for summary judgment and his opposition to defendants' motion for summary judgment are based solely on his argument that defendants violated Oklahoma law by failing to have a procedure for reinstatement on the date plaintiff was notified of his removal from the rotation log. Dkt. # 21, at 1; Dkt. # 27, at 1. Defendants respond that this issue is irrelevant because the minimum procedures necessary to satisfy the Due Process Clause are not determined by state law.[1] Dkt. # 26, at 13. Lawrence argues that he is entitled to qualified immunity because plaintiff has not cited any authority showing that his right to notice of a reinstatement policy at the time of his removal was clearly established as a matter of federal constitutional law. Dkt. # 23, at 23-26.

**A.**

Plaintiff argues that Lawrence violated his constitutional rights by removing him from the rotation log without having a reinstatement policy in place at the time of the removal. Dkt. # 21, at 1. Plaintiff asserts that he had a property interest in receiving referrals from the SPD and Lawrence's failure to comply with state law resulted in a violation of his rights under the Due Process Clause. Lawrence responds that state law does not define the procedures required to satisfy the Due Process Clause, and the actual procedures used to remove plaintiff from the rotation log were sufficient to provide plaintiff notice and an opportunity to be heard. Dkt. # 23, at 18-21.

---

[1] Defendants do not concede that § 952(c) actually requires the Town to have a reinstatement policy. However, it is not necessary for the Court to resolve this issue and the Court makes no finding in this Opinion and Order concerning plaintiff's proposed interpretation of § 952(c).

The Fourteenth Amendment to the United States Constitution prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. The fundamental requirements of constitutional due process are notice and an opportunity to be heard. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950). A person alleging that his right to procedural due process was violated must establish that "he possessed a constitutionally protected liberty or property 'interest such that the due process protections were applicable,' and that he was not 'afforded an appropriate level of process.'" Coutoure v. Bd. of Educ. of Albuquerque Public Schools, 535 F.3d 1243 (10th Cir. 2008) (quoting Zwygart v Bd. of County Comm'rs of Jefferson County, Kansas, 483 F.3d 1086, 1093 (10th Cir. 2007)).

A threshold requirement for a plaintiff alleging a violation of his procedural due process rights is that the plaintiff possess a property interest. Doyle v. Oklahoma Bar Ass'n, 998 F.2d 1559, 1569 (10th Cir. 1993). Property interests are not derived from the Constitution but, instead, are created by independent sources such as state or local law. Stears v. Sheridan County Mem'l Hosp. Bd. of Trustees, 491 F.3d 1160, 1163 (10th Cir. 2007). Plaintiff claims that he has a property interest in receiving referrals from the SPD's rotation log, because § 952(c) requires that wrecker services on the rotation log in cities of 50,000 persons or less receive referrals "on an equal basis as nearly as possible." The Tenth Circuit has considered whether a previous version of § 952 created a property interest in wrecker referrals, and found that a wrecker service did have a property interest in receiving referrals on an equal or nearly equal basis. Abercrombie v. City of Catoosa, Oklahoma, 896 F.2d 1228, 1232 (10th Cir. 1990). Lawrence does not contest the holding of Abercrombie and acknowledges that the statutory language at issue in Abercrombie is part of the

9

current version of § 952. Dkt. # 23, at 17. Based on Abercrombie, the Court finds that plaintiff has a property interest in receiving wrecker referrals from the rotation log and he has met the threshold requirement for a procedural due process claim.

However, this does not mean that plaintiff may base his procedural due process claim on the alleged denial of procedures required by § 952. The Tenth Circuit has made clear that state statutes do not determine what process is due as a matter of federal constitutional law. Hulen v. Yates, 322 F.3d 1229, 1247 (10th Cir. 2003) ("[O]nce it is determined that the Due Process Clause applies, the question remains what process is due. The answer to that question is not to be found in the [state] statute."); Mangels v. Pena, 789 F.2d 836 (10th Cir. 1986) ("A failure to comply with state or local procedural requirement does not necessarily constitute a denial of due process; the alleged violation must result in a procedure which itself falls short of standards derived from the Due Process Clause."). Although § 952 is the source of plaintiff's property interest, the procedural requirements of that statute are not relevant when considering whether plaintiff received procedural due process as a matter of federal law. Hennigh v. City of Shawnee, 155 F.3d 1249, 1256 (10th Cir. 1998) ("the Constitution does not require that each individual receive the procedural guarantees provided for by the instrument which bestows a property interest."). Instead, the Court must determine what amount of process was required under the circumstances, and a post-termination hearing is ordinarily sufficient to protect a person's right to due process. Copelin-Brown v. New Mexico State Personnel Office, 399 F.3d 1248, 1255 (10th Cir. 2005). The procedures required to satisfy the Due Process Clause depend on the circumstances of the specific case, but the state must at least provide notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." PJ ex rel. Jensen v. Wagner, 603 F.3d 1182, 1200 (10th Cir. 2010). Plaintiff's claims against both defendants are

premised on an alleged failure to provide all of the procedural protections required under § 952(c), but it is clear that plaintiff may not rely solely on procedural protections afforded by state law to establish a violation of the Due Process Clause. Instead, the appropriate inquiry is whether the procedures actually provided to plaintiff satisfied the requirements of the Due Process Clause.

There is no dispute that plaintiff received pre-termination notice that he would be removed from the rotation log, and this element of plaintiff's procedural due process claim is not in dispute. However, plaintiff argues that he was entitled to additional procedural protections before the removal could take effect. The Supreme Court has not specified any particular procedures that must be followed before an individual can be deprived of a property interest, and courts must evaluate whether the actual procedures used were adequate based on the facts of the particular case. Zinermon v. Burch, 494 U.S. 113, 127 (1990) ("Due process, as this Court often has said, is a flexible concept that varies with the particular situation."). However, the Supreme Court has identified three factors that should be considered:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976). "When the pre-termination process offers little or no opportunity for the [individual] to present his side of the case, the procedures in the post-termination hearing become much more important." Benavidez v. City of Albuquerque, 101 F.3d 620, 626 (10th Cir. 1996).

Plaintiff was given written notice of his impending removal from the rotation log at least 10 days before the removal took effect. Dkt. # 23-4. Plaintiff responded to the written notice through

11

an attorney on November 23, 2009, and argued that his removal was improper under state law. Dkt. # 23-5, at 1. On December 2, 2009, the day the removal became effective, plaintiff received a letter from Town's attorney stating that his request for reconsideration had been rejected but the Town had adopted a reinstatement procedure to address plaintiff's concerns. Dkt. # 23-6, at 1-2. Plaintiff requested to meet with Lawrence and others involved in the decision to remove plaintiff from the rotation log, and a meeting was held on December 15, 2009. See Dkt. # 23-8; Dkt. # 23-9. The meeting did not result in the immediate restoration of plaintiff to the restoration log. However, on January 7, 2010, the Town Administrator advised plaintiff that he could apply for reinstatement. Dkt. # 23-11. Plaintiff chose to file this lawsuit instead and did not apply for reinstatement until May 7, 2010. Dkt. # 23-13.

The Court finds that the procedures for removal of plaintiff from the rotation log were adequate and plaintiff has not shown that Lawrence violated plaintiff's right to procedural due process. The undisputed facts show that plaintiff was given sufficient notice of his removal from the rotation log and his pre-termination letter was given fair consideration by the Town's attorney. In fact, plaintiff's letter resulted in the adoption of a reinstatement policy. After plaintiff's removal became effective, he was granted an informal post-termination hearing with the relevant decision-makers and given an opportunity to respond to the allegations against him. It appears that plaintiff was unwilling to discuss the events of November 13,14, and 15, 2009 in great detail and his response did not alleviate Lawrence's concerns about officer safety. See Dkt. # 23-1, at 5. Consequently, plaintiff was not restored to the rotation log immediately following the December 15, 2009 meeting. Plaintiff could have applied for reinstatement as early as January 7, 2010 and potentially minimized any financial loss to himself but, instead, he chose not to apply for reinstatement and filed a lawsuit

12

alleging that Lawrence denied him procedural due process. The only procedure that plaintiff claims was lacking was that the Town did not have a reinstatement policy when it notified him of his removal from the rotation log. Plaintiff has not shown that he was harmed by the absence of a reinstatement policy at the time that Lawrence notified plaintiff of his removal from the rotation log. The Town adopted a reinstatement policy by the date plaintiff's removal became effective and, in any event, the evidence shows that plaintiff did not take advantage of the actual reinstatement policy in a timely manner. The Mathews factors support a finding that plaintiff received an appropriate amount of process. Although plaintiff's removal from the rotation undoubtedly affected his private interest, he fails to give any weight to Lawrence's concerns about officer safety and there was a legitimate public interest in timely removing plaintiff from the rotation log. Plaintiff entire case is premised on the alleged absence of a reinstatement policy, but it is clear that the Town actually had a reinstatement policy when plaintiff's removal became effective on December 2, 2009. Thus, the procedure that plaintiff claims was missing was actually available to him, and he has not shown that any additional procedures could have been adopted to safeguard against a denial of due process. The Court has no difficulty in concluding that plaintiff received adequate procedural protection before and after his removal from the rotation log and plaintiff's right to procedural due process was not violated.

Even if the Court were to accept plaintiff's argument that he was technically denied due process by the lack of strict compliance with § 952(c), Lawrence argues that he is entitled to qualified immunity from plaintiff's claim. The Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity shields public officials from facing the burdens of litigation and is an immunity from suit, not simply a defense to plaintiff's claims. Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1150 (10th Cir. 2006). The Tenth Circuit has adopted a three part test to analyze a qualified immunity defense: (1) the court must consider if plaintiff's allegations establish a constitutional violation; (2) if plaintiff has alleged a constitutional violation, the court must examine whether the law was clearly established at the time the alleged violation occurred; and (3) even the law was clearly established, the court must consider any extraordinary circumstances prevented the public official from knowing his actions were unconstitutional. Gomes v. Wood, 451 F.3d 1122, 1134 (10th Cir. 2006); Lawrence v. Reed, 406 F.3d 1224, 1230 (10th Cir. 2005). Law is clearly established if "a reasonable official in defendant's situation would have understood that his conduct" violated plaintiff's constitutional rights. Moore v. Guthrie, 438 F.3d 1036, 1042 (10th Cir. 2006). In Hope v. Pelzer, 536 U.S. 741 (2002), the Supreme Court changed this analysis from a "scavenger hunt for prior cases with precisely the same facts" to an inquiry into whether officials had fair notice that their conduct was unconstitutional. Pierce v. Gilchrist, 359 F.3d 1279, 1298 (10th Cir. 2004). Plaintiff bears the burden to prove that his constitutional rights were violated and that the law giving rise to his claim was clearly established at the time the acts occurred. Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001).

The Court has already determined that plaintiff has failed to establish that a constitutional violation occurred and, even if he had, plaintiff has cited no authority showing that the right to a reinstatement procedure at the precise moment he received notice of his impending removal from the rotation log was clearly established as a matter of federal law. If plaintiff had been summarily

removed from the rotation log, it is clear that Lawrence would have been on notice that this conduct violated plaintiff's right to procedural due process. See Pritchett v. Alford, 973 F.2d 307 (4th Cir. 1992) (denying qualified immunity to defendants when the South Carolina Highway Patrol summarily removed a wrecker service from the state's wrecker list). However, plaintiff received at least 10 days notice before his removal from the rotation log became effective and he contested the removal before it took effect. The Court also notes that Lawrence has raised a defense of qualified immunity and it is plaintiff's burden, not the Court's, to show that Lawrence violated plaintiff's clearly established rights. Plaintiff's attempt to show a violation of his right to procedural due process by reference to procedures required by state statute is plainly contrary to clearly established law, and the Court will not construct other arguments on plaintiff's behalf. Lawrence would be entitled to qualified immunity even if plaintiff could establish a genuine issue of material fact on his procedural due process claim.

**B.**

Plaintiff also asserts a claim under Oklahoma's Governmental Tort Claims Act, OKLA. STAT. tit. 51, § 151 et seq. (GTCA), against the Town, because the Town failed to adopt a reinstatement policy in compliance with § 952(c).[2] He may possibly be alleging a § 1983 claim against the Town and, as the Town had addressed this issue in its motion for summary judgment, the Court will also consider whether plaintiff has a viable § 1983 claim against the Town.

---

[2] Plaintiff's second amended complaint does not reference § 1983 as to his claim against the Town, and specifically refers to the notice requirements of the GTCA. However, plaintiff's response to defendant's motion for summary judgment suggests that plaintiff intended to assert a GTCA claim and a § 1983 claim against the Town. See Dkt. # 27, at 12-13. Therefore, the Court will assume that plaintiff intended to allege both claims.

15

To the extent that plaintiff is asserting a state law claim, the Town argues that such a claim is barred by the plain language of the GTCA.[3] The GTCA does not subject the state or a political subdivision to liability relating to "[l]icensing powers or functions including, but not limited to, the issuance, denial, suspension or revocation of or failure to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authority." OKLA. STAT. tit. 51, § 155(12). Plaintiff's alleged injury arose out of the Town's exercise of its licensing powers or other "similar authority," but the Town is immune from these types of claims under the GTCA. Robinson v. Rhodes, 972 P.2d 360 (Okla. Civ. App. 1998). However, the GTCA does not prevent plaintiff from asserting similar claims under § 1983 against the state or political subdivision.[4] See Brander's Club, Inc. v. City of Lawton, 918 P.2d 69, 71 (Okla. 1996).

Plaintiff may also be asserting a § 1983 claim against the Town. Under § 1983, a local government or municipality may be held liable for adopting an official policy or custom causing a

---

[3] Plaintiff does not respond to this argument and relies solely on § 1983 in his response to defendant's motion for summary judgment. See Dkt. # 27.

[4] The Town also cites two other exemptions from liability under the GTCA. See OKLA. STAT. tit. 51, §§ 155(4) and (5). Section 155(4) bars claims concerning the "adoption or enforcement" of a law or rule and section 155(5) excludes liability for the performance of a discretionary act or the exercise of a discretionary power. The Oklahoma Supreme Court has construed § 155(4) to exempt claims involving a discretionary decision as to whether a law should be enforced. Morales v. City of Oklahoma City ex rel. Oklahoma City Police Dep't, 230 P.3d 869 (Okla. 2010). Section 155(5) has been interpreted to bar claims that an official made a legal error when exercising his discretion, although this exemption does not apply to claims for negligent performance of a rule or policy. Franks v. Union City Public Schools, 943 P.2d 611, 613-14 (Okla. 1997). Plaintiff is not directly challenging Lawrence's decision to remove him from the rotation log, and it is not clear that §§ 155(4) or (5) apply to plaintiff's claim that the Town used an improper procedure to remove him from the rotation log. However, the Court does not reach the applicability of either § 155(4) or § 155(5), because plaintiff's claim clearly relates to the Town's exercise of its "licensing powers" or other "similar authority."

16

violation of constitutional rights, but local governments can not be sued under a respondeat superior theory of liability. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978). "[T]o establish municipal liability, a plaintiff must show: 1) the existence of a municipal policy or custom and 2) a direct causal link between the policy or custom and the injury alleged." Graves v. Thomas, 450 F.3d 1215, 1218 (10th Cir. 2006). It is not enough for a plaintiff to allege that the actions of a governmental employee injured him. Olsen v. Layton Hills Mall, 312 F.3d 1304, 1318 (10th Cir. 2002). "Instead, it must be shown that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action." Seamons v. Snow, 206 F.2d 1021, 1029 (10th Cir. 2000). One way for a plaintiff to state a claim of municipal liability is to allege that an express policy deprives the plaintiff of a constitutional right. Christensen v. Park City Mun. Corp., 554 F.3d 1271, 1279 (10th Cir. 2009). Another way to show that an official policy was the "moving force" behind a constitutional violation is show that an unconstitutional act was committed by an official with final policymaking authority. Simmons v. Utah Health Care Special Dist., 506 F.3d 1281, 1284-85 (10th Cir. 2007).

Plaintiff's claim against the Town fails for the same reasons discussed above as to his § 1983 claim against Lawrence. See supra at III.A. Plaintiff's reliance on the Town's alleged failure to adopt a reinstatement policy before giving notice of his removal from the rotation log does not establish that plaintiff's federal due process rights were violated. The Town adopted a reinstatement policy before officially removing plaintiff from the rotation log and stated that it would follow this policy if plaintiff intended to seek reinstatement. See Dkt. # 23-6, at 1. Town officials met with plaintiff on December 15, 2009 and considered his request to reconsider his removal from the

rotation log. Even if the Court were to assume that the Town technically violated § 952(c), plaintiff was given notice of his removal from the rotation log and had ample opportunity to be heard. Although plaintiff claims that he was not given an opportunity for reinstatement, his argument is not supported by the summary judgment record. Plaintiff has not shown that the Town adopted an unconstitutional policy or that the Town's procedure for removing him from the rotation violated plaintiff's right to due process, and the Town is entitled to summary judgment on plaintiff's § 1983 claim.[5]

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment and Brief in Support Thereof (Dkt. # 21) is **denied**. Defendants John D. Lawrence and Town of Skiatook's Motion for Summary Judgment (Dkt. # 22) is **granted**. A separate judgment is entered herewith.

**DATED** this 21st day of January, 2011.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[5] Even if plaintiff's state law claim were not barred by § 155(12), the Court would not have jurisdiction over this claim and would not choose to exercise supplemental jurisdiction over this claim. See Smith v. City of Enid, 149 F.3d 1151, 1156 (10th Cir. 1998) ("[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state law claims"); Ball v. Renner, 54 F.3d 664, 669 (10th Cir. 1995) (noting that there are "the best of reasons" for a district court to defer to a state court rather than retaining and disposing of state law claims). As plaintiff's GTCA claim involves Oklahoma law only and is between an Oklahoma resident and an Oklahoma municipality, the Court would decline to exercise supplemental jurisdiction over plaintiff's GTCA claim.